UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI SAADALLAH BELHAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MOSHE YA'ALON, <br><br> Defendant | No. 1:05-cv-2167 (PLF) <br><br> Declaration on the Status of War Crimes Under International Humanitarian Law |

DECLARATION ON THE STATUS OF WAR CRIMES UNDER

INTERNATIONAL HUMANITARIAN LAW

I.   Introduction

This Declaration examines the status of war crimes under international humanitarian law.[1] Specifically, it examines the international humanitarian law prohibitions on the targeting or bombing of civilian populations, humanitarian facilities, and peacekeeping missions.

II.   **International Humanitarian Law Prohibits the Targeting or Bombing of Civilian Populations**

Military attacks on civilian populations and civilian targets are expressly prohibited under the laws and customs of war. One of the first efforts to codify the prohibition appears in the 1899 Hague Convention II with Respect to the Laws and Customs of War on Land. See Hague Convention II with Respect to the Laws and Customs of War on Land, July 29,

---

[1] The qualifications of the Declarant appear at the end of this Declaration.

1899, 32 Stat. 1803. Article 25 of the accompanying Regulations Concerning the Laws and Customs of War on Land provides that "[t]he attack or bombardment, by whatever means, of towns, villages, dwellings, or buildings, which are not defended, is prohibited." The 1907 Hague Convention IV, Respecting the Laws and Customs of War on Land contains an identical provision. See Hague Convention, Respecting the Laws and Customs of War on Land, Oct. 18, 1907, 36 Stat. 2277. Article 25 of the accompanying Regulations Concerning the Laws and Customs of War on Land provides that "[t]he attack or bombardment, by whatever means, of towns, villages, dwellings, or buildings which are undefended is prohibited."

The Charter of the International Military Tribunal, ratified by the Allied Powers at the end of the Second World War, imposed criminal liability for attacks on civilians.

> Such violations shall include, but not be limited to, murder, ill-treatment or deportation to slave labor or for any other purpose of civilian population of or in occupied territory, murder or ill-treatment of prisoners of war or persons on the seas, killing of hostages, plunder of public or private property, wanton destruction of cities, towns or villages, or devastation not justified by military necessity;

Charter of the International Military Tribunal, art. 6(b), Aug. 8, 1945, 59 Stat. 1544, U.N.T.S. 279. The Nuremberg Tribunal convicted several defendants for their complicity in attacks on civilian populations. See The Nurnberg Trial, 6 F.R.D. 69, 116-120 (1946). A similar provision was included in Control Council Law No. 10, which was adopted by the Allied Powers to govern other postwar trials in Germany.

> Atrocities or offences against persons or property, constituting violations of the laws or customs of war, including but not limited to, murder, ill treatment or deportation to slave labour or for any other purpose of civilian population from occupied territory, murder or ill treatment of prisoners of war or persons on the seas, killing of hostages, plunder of public or private property,

2

> wanton destruction of cities, towns or villages, or devastation not justified by military necessity.

Control Council Law No. 10, Punishment of Persons Guilty of War Crimes, Crimes Against Peace and Against Humanity, art. II(1)(b), Dec. 20, 1945, 3 <u>Official Gazette Control Council for Germany</u> 50-55 (1946).

The 1949 Geneva Conventions codified long-standing customary practice regarding international humanitarian law. A primary purpose of the Geneva Conventions is to protect individuals not taking active part in hostilities, including both combatants who by reason of injury, illness, or captivity are no longer engaged in hostilities, and civilians. To this end, the Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War condemns attacks on civilians as "grave breaches." <u>See</u> Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.S.T.S. 287. <u>See generally</u> IV <u>The Geneva Conventions of 12 August 1949: Commentary</u> (Jean Pictet ed., 1995). Grave breaches are defined as:

> wilful killing, torture or inhuman treatment, including biological experiments, wilfully causing great suffering or serious injury to body or health, unlawful deportation or transfer or unlawful confinement of a protected person, compelling a protected person to serve in the forces of a hostile Power, or wilfully depriving a protected person of the rights of fair and regular trial prescribed in the present Convention, taking of hostages and extensive destruction and appropriation of property, not justified by military necessity and carried out unlawfully and wantonly.

Fourth Geneva Convention, <u>supra</u>, at art. 147. The Fourth Geneva Convention requires states to establish criminal sanctions for persons who commit, or order to be committed, grave breaches. Moreover, states are "under the obligation to search for persons alleged to have committed, or to have ordered to be committed, such grave breaches, and shall bring such persons, regardless of their nationality, before its own courts." <u>Id</u>. at art. 146. The Fourth Geneva Convention codifies norms that are widely accepted in the international community. <u>See</u> Theodor Meron, "The Geneva Conventions as Customary Law," 81 <u>Am. J. Int'l L.</u> 348 (1987). It has been ratified by 192 countries, including the United States.

The norms articulated in the Fourth Geneva Convention are reinforced by the two 1977 Protocols Additional to the Geneva Conventions of 12 August 1949. Protocol I concerns international armed conflicts, and Protocol II concerns armed conflicts of a non-international character. Protocol I contains extensive protections for civilian populations and imposes strict limits on military operations that can cause injury to civilian populations. <u>See</u> Protocol Additional to the Geneva Conventions of 12 August 1949 and Relating to the Protection of Victims of International Armed Conflicts (Protocol I), June 8, 1977, 1125 U.N.T.S. 3. Protocol I codifies norms that are widely accepted in the international community. <u>See generally</u> Marco Roscini, "Targeting and Contemporary Aerial Bombardment," 54 <u>Int'l & Comp. L.Q.</u> 411 (2005). It has been ratified by 164 countries.[2]

---

[2] While the United States has not ratified Protocol I, this decision is not based on any challenges to its substantive provisions regarding the protection of civilian populations in

3

Article 48 of Protocol I provides that "[i]n order to ensure respect for and protection of the civilian population and civilian objects, the Parties to the conflict shall at all times distinguish between the civilian population and combatants and between civilian objects and military objectives and accordingly shall direct their operations only against military objectives." Article 51 contains detailed provisions regarding the protection of civilian populations.

> 1. The civilian population and individual civilians shall enjoy general protection against dangers arising from military operations. To give effect to this protection, the following rules, which are additional to other applicable rules of international law, shall be observed in all circumstances.
>
> 2. The civilian population as such, as well as individual civilians, shall not be the object of attack. Acts or threats of violence the primary purpose of which is to spread terror among the civilian population are prohibited.
>
> 3. Civilians shall enjoy the protection afforded by this section, unless and for such time as they take a direct part in hostilities.
>
> 4. Indiscriminate attacks are prohibited. Indiscriminate attacks are:
>
>> (a) those which are not directed at a specific military objective;
>> (b) those which employ a method or means of combat which cannot be directed at a specific military objective; or
>> (c) those which employ a method or means of combat the effects of which cannot be limited as required by this Protocol;
>
> and consequently, in each such case, are of a nature to strike military objectives and civilians or civilian objects without distinction.
>
> 5. Among others, the following types of attacks are to be considered as indiscriminate:
>
>> (a) an attack by bombardment by any methods or means which treats as a single military objective a number of clearly separated and distinct military objectives located in a city, town, village or other area containing a similar concentration of civilians or civilian objects; and

---

international armed conflicts. Indeed, the United States considers many of the provisions of Protocol I to constitute customary international law. See generally Kenneth Watkin, "Controlling the Use of Force: A Role for Human Rights Norms in Contemporary Armed Conflict," 98 Am. J. Int'l L. 1, 15 (2004); Theodor Meron, "The Time Has Come for the United States to Ratify Geneva Protocol I," 88 Am. J. Int'l L. 678 (1995).

> (b) an attack which may be expected to cause incidental loss of civilian life, injury to civilians, damage to civilian objects, or a combination thereof, which would be excessive in relation to the concrete and direct military advantage anticipated. . . .

According to the well-regarded Commentaries drafted by the International Committee of the Red Cross (ICRC), Article 51 is "one of the most important articles in the Protocol. It explicitly confirms the customary rule that innocent civilians must be kept outside hostilities as far as possible and enjoy general protection against danger arising from hostilities." 1 Commentary on the Additional Protocols of 8 June 1977 to the Geneva Conventions of 12 August 1949 615 (Yves Sandoz et al. eds., 1987).

The Statute of the International Criminal Tribunal for the Former Yugoslavia (ICTY), adopted by the U.N. Security Council in 1993, provides that attacks on civilian populations are considered war crimes. See Statute of the International Tribunal for the Prosecution of Persons Responsible for Serious Violations of Humanitarian Law Committed in the Territory of the Former Yugoslavia Since 1991, Annex to Report of the Secretary-General pursuant to Paragraph 2 of Security Council Resolution 808 (1993), U.N. Doc. S/25704 & Add.1 (1993). The ICTY Statute imposes individual criminal liability on individuals charged with committing or ordering to be committed grave breaches of the 1949 Geneva Conventions. Id. at art. 2. It also imposes liability for the "attack, or bombardment, by whatever means, of undefended towns, villages, dwellings, or buildings." Id. at art. 3(c).

Finally, the Rome Statute of the International Criminal Court offers the most recent codification of war crimes. See Rome Statute of the International Criminal Court, July 17, 1998, 2187 U.N.T.S. 3. See generally The Rome Statute of the International Criminal Court:

5

A Commentary (Antonio Cassese et al. eds., 2002); Commentary on the Rome Statute of the International Criminal Court (Otto Triffterer ed., 1999). It provides an extensive list of acts that constitute war crimes, which include grave breaches of the 1949 Geneva Conventions as well as other serious violations of the laws and customs applicable in international armed conflict. Article 8 lists the following acts as war crimes.

> (i) Intentionally directing attacks against the civilian population as such or against individual civilians not taking direct part in hostilities;
>
> (ii) Intentionally directing attacks against civilian objects, that is, objects which are not military objectives;
>
> . . .
>
> (iv) Intentionally launching an attack in the knowledge that such attack will cause incidental loss of life or injury to civilians or damage to civilian objects or widespread, long-term and severe damage to the natural environment which would be clearly excessive in relation to the concrete and direct overall military advantage anticipated;
>
> (v) Attacking or bombarding, by whatever means, towns, villages, dwellings or buildings which are undefended and which are not military objectives;

See generally Knut Dormann, Elements of War Crimes Under the Rome Statute of the International Criminal Court (2003). The Rome Statute articulates norms that are widely accepted in the international community. Since its adoption in 1998, it has been ratified by 100 countries.[3]

---

[3] While the United States has not ratified the Rome Statute, this decision is not based on any challenges to its substantive provisions regarding the protection of civilian populations in international armed conflicts. Indeed, the United States considers many of the provisions in the Rome Statute to constitute customary international law. See generally David Scheffer, "The United States and the International Criminal Court," 93 Am. J. Int'l L. 12 (1999).

6

The prohibition on targeting or bombing of civilian populations is based on the principle of distinction, which is one of the fundamental elements of international humanitarian law. The principle of distinction differentiates between combatants and civilians. It is designed to ensure that civilian populations are not targeted during military operations. See generally Yoram Dinstein, The Conduct of Hostilities Under the Law of International Armed Conflict (2004); The Handbook of Humanitarian Law in Armed Conflict (Dieter Fleck ed., 1999). Thus, the principle of distinction imposes limits on the use of force. As set forth by the International Court of Justice:

> The cardinal principles contained in the texts constituting the fabric of humanitarian law are the following. The first is aimed at the protection of the civilian population and civilian objects and establishes the distinction between combatants and non-combatants; States must never make civilians the object of attack and must consequently never use weapons that are incapable of distinguishing between civilian and military targets. According to the second principle, it is prohibited to cause unnecessary suffering to combatants: it is accordingly prohibited to use weapons causing them such harm or uselessly aggravating their suffering. In application of that second principle, States do not have unlimited freedom of choice of means in the weapons they use.

Legality of the Threat or Use of Nuclear Weapons, Advisory Opinion, 1996 ICJ Rep. 226 (July 8), at para. 78. These limits on the use of force address a number of issues, including indiscriminate attacks, proportionality in attack, and precautions in attacks. See generally I Jean-Marie Henckaerts & Louise Doswald-Beck, Customary International Humanitarian Law: Rules 37-67 (2005); II Jean-Marie Henckaerts & Louise Doswald-Beck, Customary International Humanitarian Law: Practice 247-418 (2005).

The prohibition against the indiscriminate use of force is firmly set forth in Protocol I to the 1949 Geneva Conventions.[4] Article 57 describes the precautionary measures that must be taken by belligerents.

> 1. In the conduct of military operations, constant care shall be taken to spare the civilian population, civilians and civilian objects.
>
> 2. With respect to attacks, the following precautions shall be taken:
>
>> (a) Those who plan or decide upon an attack shall:
>>
>>> (i) Do everything feasible to verify that the objectives to be attacked are neither civilians nor civilian objects and are not subject to special protection but are military objectives within the meaning of paragraph 2 of Article 52 and that it is not prohibited by the provisions of this Protocol to attack them;
>>> (ii) Take all feasible precautions in the choice of means and methods of attack with a view to avoiding, and in any event to minimizing, incidental loss of civilian life, injury to civilians and damage to civilian objects;

---

[4] A more recent formulation of this principle is found in the San Remo Manual on International Law Applicable to Armed Conflicts at Sea. With respect to armed attacks, the following precautions shall be taken:

> (a) those who plan, decide upon or execute an attack must take all feasible measures to gather information which will assist in determining whether or not objects which are not military objectives are present in an area of attack;
> (b) in the light of the information available to them, those who plan, decide upon or execute an attack shall do everything feasible to ensure that attacks are limited to military objectives;
> (c) they shall furthermore take all feasible precautions in the choice of methods and means in order to avoid or minimize collateral casualties or damage; and
> (d) an attack shall not be launched if it may be expected to cause collateral casualties or damage which would be excessive in relation to the concrete and direct military advantage anticipated from the attack as a whole; an attack shall be cancelled or suspended as soon as it becomes apparent that the collateral casualties or damage would be excessive.

San Remo Manual on International Law Applicable to Armed Conflicts at Sea 122 (Louise Doswald-Beck ed., 1995).

> (iii) Refrain from deciding to launch any attack which may be expected to cause incidental loss of civilian life, injury to civilians, damage to civilian objects, or a combination thereof, which would be excessive in relation to the concrete and direct military advantage anticipated;
>
> (b) An attack shall be cancelled or suspended if it becomes apparent that the objective is not a military one or is subject to special protection or that the attack may be expected to cause incidental loss of civilian life, injury to civilians, damage to civilian objects, or a combination thereof, which would be excessive in relation to the concrete and direct military advantage anticipated;
>
> (c) Effective advance warning shall be given of attacks which may affect the civilian population, unless circumstances do not permit.
>
> 3. When a choice is possible between several military objectives for obtaining a similar military advantage, the objective to be selected shall be that the attack on which may be expected to cause the least danger to civilian lives and to civilian objects.
>
> 4. In the conduct of military operations at sea or in the air, each Party to the conflict shall, in conformity with its rights and duties under the rules of international law applicable in armed conflict, take all reasonable precautions to avoid losses of civilian lives and damage to civilian objects.
>
> 5. No provision of this Article may be construed as authorizing any attacks against the civilian population, civilians or civilian objects.

According to the ICRC Commentary, Article 57 imposes an important duty on belligerents with respect to civilian populations.[5] Sandoz, supra, at 680. Indeed, these obligations are already recognized to constitute customary international law.

---

[5] The ICRC Commentary to Article 57 indicates that the rules regarding indiscriminate force and the duty to protect civilian populations are designed, in part, to minimize accidents. "The history of the Second World War and subsequent conflicts contains numerous cases of attacks which were launched in error against non-military objectives, or against objectives whose destruction produced only an insufficient military advantage compared with the losses inflicted on civilians. The requirement of a precise identification of objectives should be especially welcomed, as the effective implementation of the safeguard principles expressed in the Protocol largely depends on this." Sandoz, supra, at 680.

In sum, international humanitarian law contains a clear prohibition on the targeting or bombing of civilian populations or civilian targets. This prohibition incorporates the principle of distinction, which is designed to ensure that civilian populations are not targeted during military operations. The principle of distinction imposes further limits on the use of force, prohibiting the use of weapons that fail to discriminate between civilians and combatants. Failure to comply with this prohibition constitutes a war crime.

### III. International Humanitarian Law Prohibits the Targeting or Bombing of Humanitarian Facilities and Peacekeeping Missions

In addition to prohibiting attacks on civilian populations, international humanitarian law also prohibits the targeting or bombing of humanitarian facilities and peacekeeping missions. For example, Protocol I to the 1949 Geneva Conventions requires protection for relief efforts and personnel participating in relief efforts. Protocol I, supra, at arts. 70, 71. The Rome Statute of the International Criminal Court extends these requirements by establishing criminal liability for attacks on relief efforts, including humanitarian facilities

and peacekeeping missions.[6] Thus, the Rome Statute provides that the following acts constitute war crimes:

> (iii) Intentionally directing attacks against personnel, installations, material, units or vehicles involved in a humanitarian assistance or peacekeeping mission in accordance with the Charter of the United Nations, as long as they are entitled to the protection given to civilians or civilian objects under the international law of armed conflict; . . .

Rome Statute, supra, at art. 8(2)(b)(iii). See generally Dormann, supra, at 153-160.

Humanitarian relief personnel and objects used for humanitarian relief operations must be respected and protected.[7] I Henckaerts & Doswald-Beck, supra, at 105-111; II Henckaerts & Doswald-Beck, supra, at 588-639. "State practice establishes this rule as a norm of customary international law applicable in both international and non-international armed conflicts." I Henckaerts & Doswald-Beck, supra, at 105. Thus, international humanitarian law prohibits the targeting or bombing of humanitarian relief efforts. The U.N. Security Council has reiterated this basic principle of international humanitarian law on numerous occasions. See, e.g., Security Council Resolution 733 (1992) (calling on all

---

[6] The Special Court for Sierra Leone contains a similar provision. Statute of the Special Court for Sierra Leone, Jan. 16, 2002, available at http://www.sc-sl.org. Article 4 of the Statute provides that the Special Court shall have the power to prosecute persons who committed the following serious violations of international humanitarian law:

> a. Intentionally directing attacks against the civilian population as such or against individual civilians not taking direct part in hostilities;
>
> b. Intentionally directing attacks against personnel, installations, material, units or vehicles involved in a humanitarian assistance or peacekeeping mission in accordance with the Charter of the United Nations, as long as they are entitled to the protection given to civilians or civilian objects under the international law of armed conflict; . . .

[7] Similarly, directing an attack against a zone established to shelter the wounded, the sick, and civilians from the effects of hostilities is prohibited. See I Henckaerts & Doswald-Beck, supra, at 119-120; II Henckaerts & Doswald-Beck, supra, at 671-722.

parties to the conflict in Somalia to ensure the safety of humanitarian personnel and to ensure respect for the rules and principles of international law regarding the protection of civilian populations); Security Council Resolution 998 (1995) (calling on all parties to the conflict in Bosnia-Herzegovina to fully respect the safety of humanitarian assistance personnel); Security Council Resolution 1195 (calling on the government of Angola to guarantee unconditionally the safety and freedom of international humanitarian personnel) (1998). See generally International Committee of the Red Cross Respect for and Protection of the Personnel of Humanitarian Organizations (1998); Alexandre Faite, "Legal Considerations Regarding the Protection of Humanitarian Workers in the Field," Secure 02 37 (2002).

International humanitarian law also prohibits the targeting or bombing of peacekeeping missions.[8] I Henckaerts & Doswald-Beck, supra, at 112-114.

> No official contrary practice was found. Attacks against peacekeeping personnel and objects have generally been condemned by States. They have also been condemned by the United Nations and other international organizations. Some of these condemnations refer to the attacks as criminal. In addition to direct attacks, the United Nations has condemned other acts perpetrated against peacekeeping personnel which do not amount to attacks as such, including harassment, abuse, intimidation, violence, detention and maltreatment, and has called upon the parties to conflicts to ensure their safety, security and freedom of movement.

---

[8] The 1994 Convention on the Safety of United Nations and Associated Personnel prohibits attacks against United Nations personnel, equipment, and premises. See Convention on the Safety of United Nations and Associated Personnel, art. 7(1), Dec. 9, 1994, 2051 U.N.T.S. 391. See generally Siobhan Wills, "The Need for Effective Protection of United Nations Peacekeepers: The Convention on the Safety of United Nations and Associated Personnel," 10 Human Rts. Br. 26 (2003); Christopher Greenwood, "Protection of Peacekeepers: The Legal Regime," 7 Duke J. Comp. & Int'l L. 185 (1995); Antoine Bouvier, "Convention on the Safety of United Nations and Associated Personnel," 309 International Review of the Red Cross 638 (1995).

Id. at 113. The U.N. Security Council has categorically denounced attacks against peacekeeping missions and related operations on numerous occasions. See, e.g., Security Council Resolution 587 (1986) (condemning attack on U.N. peacekeeping mission in Lebanon); Security Council Resolution 837 (1993) (condemning attack on U.N. peacekeeping mission in Somalia); (1997); Security Council Resolution 1099 (1997) (condemning attacks on U.N. peacekeeping mission in Tajikistan).

In August 2003, the U.N. Security Council forcefully emphasized the importance of protecting personnel involved in humanitarian assistance and peacekeeping missions following the attack on the headquarters of the United Nations Assistance Mission in Iraq in Baghdad. See generally Report of the Independent Panel on the Safety and Security of U.N. Personnel in Iraq (2003). The perambulatory clauses of Security Council 1502 highlight the status of international humanitarian law and the serious nature of attacks on humanitarian assistance and peacekeeping missions.

> *Emphasizing* that there are existing prohibitions under international law against attacks knowingly and intentionally directed against personnel involved in a humanitarian assistance or peacekeeping mission undertaken in accordance with the Charter of the United Nations which in situations of armed conflicts constitute war crimes, and recalling the need for States to end impunity for such criminal acts,
>
> . . .
>
> *Gravely concerned* at acts of violence in many parts of the world against humanitarian personnel and United Nations and its associated personnel, in particular deliberate attacks, which are in violation of international humanitarian law, as well as other international law that may be applicable, such as the attack against the Headquarters of the United Nations Assistance Mission in Iraq (UNAMI) in Baghdad on 19 August 2003 . . . .

Security Council Resolution 1502 (2003) (emphasis in original). The substantive clauses of Resolution 1502 then state that the Security Council:

> 3. *Reaffirms also* the obligation of all parties involved in an armed conflict to comply fully with the rules and principles of international law applicable to them related to the protection of humanitarian personnel and United Nations and its associated personnel, in particular international humanitarian law, human rights law and refugee law;
>
> 4. *Urges* all those concerned as set forth in international humanitarian law, including the Geneva Conventions and the Hague Regulations, to allow full unimpeded access by humanitarian personnel to all people in need of assistance, and to make available, as far as possible, all necessary facilities for their operations, and to promote the safety, security and freedom of movement of humanitarian personnel and United Nations and its associated personnel and their assets[.]

See generally Sean Murphy, "Protection of U.N. and Humanitarian Personnel in Conflict Zones," 98 Am. J. Int'l L. 172 (2004).

In sum, international humanitarian law contains a clear prohibition on the targeting or bombing of humanitarian facilities and peacekeeping missions. Failure to comply with this prohibition constitutes a war crime.

IV.  **Conclusion**

This Declaration has examined the status of war crimes under international humanitarian law. It is firmly established that international humanitarian law prohibits the targeting of civilian populations, humanitarian facilities, and peacekeeping missions. Indeed, such acts constitute war crimes and can give rise to individual criminal responsibility under national and international law.

Executed on this 15th of May 2006 in San Diego, California.

_____
William J. Aceves

**William J. Aceves** is a Professor of Law and Director of the International Legal Studies Program at California Western School of Law. Professor Aceves teaches Human Rights Law, Comparative Law, Foreign Affairs and the Constitution, and Law and International Relations. He was previously a Ford Foundation Fellow in International Law at the UCLA School of Law. Professor Aceves has published numerous articles on international law and human rights in law reviews throughout the country, including journals published by the law schools at Berkeley, Chicago, Columbia, Fordham, Harvard, Hastings, Michigan, Pennsylvania, Pepperdine, Vanderbilt, and Virginia. He has also written several essays for the prestigious American Journal of International Law. He was the principal author of the 2002 Amnesty International USA report on torture and impunity. Professor Aceves has appeared before the Inter-American Commission on Human Rights, the United Nations Special Rapporteur on Migrants, and the United States Commission on Civil Rights.