UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI SAADALLAH BELHAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MOSHE YA'ALON,<br><br>Defendant | No. 1:05-cv-2167 (PLF)<br><br>OBJECTIONS TO DEFENDANT'S EVIDENCE AS IMPROPER UNDER RULE 12(b)(6), NOT COMPETENT, IRRELEVANT, AND LIKELY TO CONFUSE THE ISSUES |

Judith Brown Chomsky
Michael Poulshock
LAW OFFICES OF
JUDITH BROWN
CHOMSKY
P.O. Box 29726
Elkins Park, PA 19027
Phone: (215) 782-8367
Fax: (215) 782-8368

Maria LaHood
Jennie Green
William Goodman
CENTER FOR
CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Phone: (212) 614-6434
Fax: (212) 614-6499

Jim Klimaski
KLIMASKI &
ASSOCIATES, P.C.
1819 L Street NW, 7th Floor
Washington, DC 20036
Phone: (202) 296-5600
Fax: (202) 296-5601

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs filed their complaint in this matter on November 4, 2005. Defendant moved, on February 21, 2006, to dismiss on grounds of lack of jurisdiction under the Foreign Sovereign Immunity Act (FSIA), and political question and act of state doctrines. See, Defendant's Memorandum of Points and Authorities In Support of Moshe Ya'alon's Motion to Dismiss the Complaint ("Memo.") In support of that motion, Defendant submitted and cited to evidence to which Plaintiffs now object. Specifically, Plaintiffs object to the inclusion of:

1. Letter from Daniel Ayalon, Ambassador of Israel, to U.S. Ambassador Nicholas Burns, Under-Secretary for Political Affairs, U.S. Department of State (dated Feb. 6, 2006) ("Ayalon Letter").

2. Statement of Interest of the United States, *Doe v. Liu Qi*, No. C 02-0672-CW (N.D. Cal. Sept. 27, 2002) ("*Qi* Statement of Interest").

3. Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss Official Capacity Claims, *Doe v. State of Israel*, No. 1:02-CV-1431 (JDB) (D.D.C. Oct. 31, 2002) ("Motion to Dismiss in *Doe v. Israel*").

4. The first four paragraphs of Defendant's "Introduction" section of his memorandum of law and accompanying references. Memo. at 3-6.

5. The second and third paragraphs of the preliminary section of Defendant's memorandum of law and accompanying references. Memo. at 1-2.

6. Statements of various government officials, a news article, and the website of the Center for Constitutional Rights (described in detail below).

Plaintiffs object to these materials and ask that they be stricken so as not to prejudice the record.

## II. ARGUMENT

### A. The Court Should Strike All Evidence Submitted by Defendant in Support of His Motion to Dismiss on Act of State Grounds

On a motion to dismiss challenging a district court's subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1), a court may look at evidence "outside of the pleadings." *Teva Pharms., USA, Inc. v. United States FDA*, 182 F.3d 1003, 1006 (D.C. Cir. 1999). When considering a motion to dismiss under Rule 12(b)(6), however, "the Court generally may not look outside the facts contained within the four corners of the complaint...unless it treats the motion to dismiss as a motion for summary judgment." *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 39 (D.D.C. 2005) (Friedman, J.) (internal citation omitted).

"Under either Rule 12(b)(1) or Rule 12(b)(6), a court need not consider matters outside the pleadings at all. But once it decides to consult such matters it should so inform the parties and set a schedule for submitting additional affidavits and documents if the parties wish." *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 361 (D.C. Cir. 1982). See also, *Wilderness Soc. v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987) (under Rule 12(b)(1), a district court "must give the plaintiff the opportunity to discover evidence relevant to his jurisdictional claim."); *Prakash v. American Univ.*, 727 F.2d 1174, 1179-80 (D.C. Cir. 1984) (court must afford party not moving for subject-matter dismissal "an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.").

Here, the motions to dismiss under the FSIA and the political question doctrine are 12(b)(1) motions, as they relate to whether or not this court has jurisdiction over the claims at hand. The act of state issue is not jurisdictional and Defendant's motions to dismiss on that ground is a 12(b)(6) motion. Thus, it is improper for this Court to consider the extrinsic evidence submitted by Defendant in relation to the act of state

3

issue, including: 1) the Ayalon Letter; and 2) the Statement of Interest submitted by the U.S. in *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004).

  B. **The Court Should Strike the Ayalon Letter and the Statement of Interest Submitted by Defendant Because They are Not Competent Evidence of the Propositions for Which Defendant Cites Them, and They are Irrelevant and Likely to Confuse the Issues at Hand**

    1. The Ayalon Letter

Defendant submitted the Ayalon Letter in support of his arguments that this case touches political questions and that he was acting within the scope of his lawful authority during the events in question, and possibly to support his act of state argument. Ayalon Letter at 2-3 (opining that the case raises "quintessentially political questions" and that the defendant was acting "in the course of [his] official duties, and in furtherance of the official policies" of Israel). This letter should be excluded.

The author, as a foreign ambassador, has no competence to declare whether or not either of the two aforementioned points is true. The underlying rationale of the political question and act of state doctrines is to enable courts, where appropriate, to show deference to our political branches, not to foreign governments. *See, Baker v. Carr*, 369 U.S. 186, 210-11 (1962) (political question doctrine rooted in separation of powers concerns); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964) (act of state doctrine grounded in same). Courts may give serious consideration to letters of interest from the U.S. Department of State that argue that a question is a political one and that ask the court to abstain. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 (2004) (acknowledging "case-specific deference," a doctrine by which "federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy"). However, courts may not consider this kind of statement by a non-party foreign government.

4

*Patrickson v. Dole Food Co.*, 251 F.3d 795, 803, n.7 (9th Cir. 2001) *affirmed in part on other grounds*, 538 U.S. 468 (2003), *quoting In re Tobacco Litigation*, 100 F. Supp. 2d 31, 38 (D.D.C. 2000). "Federal judges cannot dismiss a case because a foreign government finds it irksome, nor can they . . . tailor their rulings to accommodate the expressed interests of a foreign nation that is not even a party." *Id.* Instead, courts "are bound to decide cases before them according to the rule of law." *Id.* Where such a letter is sent, it is up to "*our political branches*" to "respond in whatever way *they* deem appropriate." *Id.* (emphasis added). Here, those branches have remained silent.

"Our courts are not required to stand by while a [foreign nation] attempts to close a courthouse door that Congress . . . has opened to foreign[ers]." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 936 (D.C. Cir. 1984); *U.S. v. Davis*, 767 F.2d 1025, 1038 (2d Cir. 1985) (foreign nation's effort to prevent a U.S. court from applying its own laws is "facially obstructive" of the U.S.'s substantial interest in regulating access to its own courts). This interest is particularly strong where a statute, here the ATS and TVPA, expressly grants plaintiffs the right to sue. In this circumstance, U.S. interests override whatever foreign interests may be infringed when a foreigner sues in U.S. courts against the wishes of a foreign state. *Laker Airways*, 731 F.2d at 935. By deferring to foreign interests, a court would abdicate its responsibility to uphold the statute. *Id.* at 941, n. 121, 953-55 and n. 175.

More specifically, such an extraordinary delegation of the judicial function to a foreign government would conflict with the ATS and TVPA. The very essence of these statutes is that they authorize aliens to sue for violations in which foreign officials may have been involved. *E.g. Filartiga*, 630 F.2d 876. The ATS and TVPA "express[] a

5

policy favoring receptivity by our courts" to suits for torture and summary execution, *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 105 (2d Cir. 2000), and therefore provide a U.S. forum even though such suits may not always comport with foreign interests.

Looking to foreign governments for permission to proceed in an ATS suit "invit[es] frustration of the purposes of international law by individual states," which would undermine the ATS. *Filártiga v. Pena-Irala*, 577 F. Supp. 860, 863 (E.D.N.Y. 1984); *accord Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1548 (N.D.Cal. 1987). Thus, courts in ATS cases consider a foreign state's interest only "to the extent they do not inhibit the appropriate enforcement of the applicable international law or conflict with the public policy of the United States." *Id.* at 863-864.

Even if the Court could consider the Ayalon letter, it is not competent evidence because Ambassador Ayalon is not positioned to render a legal opinion upon the question of whether or not Mr. Ya'alon was acting within the scope of his lawful authority during the events at the heart of this case. Further, the letter is unsworn, does not establish that the author is a lawyer, and does not provide the Court with legal authorities which support the opinions it contains. To the extent that the letter reflects a position or conclusion based on Israeli law, Defendant did not first file a notice of foreign law under Fed. R. Civ. P. 44.1.

Moreover, the Ayalon Letter is irrelevant to the political question and act of state doctrines and incompetent as to the issue of whether Defendant was acting within the scope of his lawful authority at the time of the attack. *See*, Fed. R. Evid. 401, 402. Its total lack of any probative value is outweighed by its likelihood of confusing the issues at

stake. *See*, Fed. R. Evid. 403. And, again, Defendant has failed to establish that Ambassador Ayalon is competent to opine about the issues. *See*, Fed. R. Evid. 602.

### 2. The Statement of Interest of the United States in *Qi*

Defendant also submitted a Statement of Interest of the United States from *Doe I v. Liu Qi*, 349 F. Supp. 2d 1258, a completely separate case. The *Qi* Statement of Interest was submitted in support of Defendant's political question argument that suits such as this one supposedly invite reciprocal treatment of U.S. officials by foreign courts (Memo. at 25) and his argument that the State Department has "urged courts" to provide immunity to foreign officials under the FSIA (Memo. at 16).

Statements of interest are issued on a case-by-case basis. *See*, *Sosa*, 542 U.S. at 733 (deference is case-specific); *Republic of Aus. v. Altmann*, 541 U.S. 677, 702 (2004) ("[S]hould the State Department choose to express its opinion on the implications of exercising jurisdiction over *particular* petitioners in connection with *their* alleged conduct, that opinion might well be entitled to deference as the considered judgment of the Executive on a particular question of foreign policy.") (emphasis in original). Thus, under *Sosa*, this Court is *precluded* from considering statements of interest issued in other cases. Statements of interest do not have precedential value and are not a miniature common law system. The government submits them to address the specific circumstances of specific cases. It would constitute a lack of respect for the Executive for this Court to draw inferences and conclusions from statements of interest in wholly different lawsuits, as these will not necessarily reflect the interests of the Executive towards this particular case. "To the extent that the United States government is concerned about potential adverse foreign relations consequences from the resolution of

7

these lawsuits, the Executive Branch possesses the competence, capacity and incentive to make its view known [] to this Court..." *Patrickson*, 251 F.3d at 803, n.7. Indeed, the State Department "has not hesitated to warn courts where it believes continuation of a lawsuit . . . would disturb U.S. relations with [a] foreign government." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 2005 U.S. Dist. LEXIS 18399 *23 (S.D.N.Y. 2005). Thus, it can safely be assumed that if the Executive believed this litigation would interfere with U.S. foreign policy, it would have made those views clear already.

As such, the *Qi* Statement is irrelevant, not competent as evidence of the Executive's views on this particular case, and likely to confuse the issues specific to this case.

### C. The Court Should Strike Portions of Defendant's Memorandum of Law Because They are Irrelevant and Likely to Confuse the Issues at Hand

#### 1. Preliminary and introductory paragraphs

The first four paragraphs of Defendant's "Introduction" to his Memorandum, pp. 3-6, and the second and third paragraphs of the preceding, unlabelled section (Memo. at 1-2) recite facts about the United States' involvement in mediating the conflict between Israel and Lebanon and about Israel's right to defend itself against terrorism. Two of these paragraphs (the third paragraph in the Introduction, Memo. at 4-5, and the second paragraph in the preliminary section, id. at 1) discuss Hezbollah's militant activities on the Israel-Lebanese border. These rhetorically-charged passages bear no relation to the central issue in this case: Defendant's participation in the decision, in contravention of the law of nations, to shell a United Nations facility known to be providing refuge to scores of civilians. That the U.S. has played a mediating role in the conflict does not

8

make it more or less likely that any fact material to that issue is true. *See*, Fed. R. Evid. 401. Similarly, Israel's right to defend itself is not being questioned. Not even Israel (*not* a party to this lawsuit) claims that the shelling of the compound was necessary or justified for its self-defense, but rather that it was an accident. Likewise, the activities of Hezbollah are irrelevant to the legality of Defendant's conduct, as the shelling of the compound was, according to Israel, accidental and not motivated by any strategic imperatives.

Defendant also cites to statements by President Clinton and State Department officials endorsing Israel's contention that the shelling of the compound was some sort of mistake. See, Memo. at 6, 7-8, 12-13 (n.16), 23 (n.26). These statements are irrelevant to the issue of whether or not the attack was in fact deliberate and are incompetent evidence of official policy positions.

The recitation of the above narratives is, due to the emotional resonance of the Arab-Israeli conflict, likely to confuse and distract from the core issues in this case. *See*, Fed. R. Evid. 403. Also, to the degree that these passages attempt to establish facts, not law, they constitute evidence inadmissible in a 12(b)(6) motion to dismiss under the act of state doctrine. For all of the above reasons, the first four paragraphs of Defendant's "Introduction" and the second and third paragraphs of the preceding section, as well as the material in the accompanying footnotes,[1] should be stricken so as not to prejudice the record.

---

[1] This includes footnotes: 1 (evidencing the irrelevant fact that Hezbollah is considered a terrorist organization by the U.S. State Department), 2 (call by President Clinton for a ceasefire), 3 (statement by Clinton that U.S. was trying to end the conflict), 4 (CNN article stating that a ceasefire was reached), 5 (Clinton's expression of regret about Qana and laying of blame for the attack on Hezbollah), 6 (same), 8 (IDF documentation of

### 2. Evidence in support of Defendant's political question argument

In support of his political question argument, Defendant also cites a number of public relations statements and one news article. Only two of these sources relate to Qana:

- U.S. Dep't of State Dispatch (Apr. 29, 1996), Memo. at 2, n.5, 23 n.26 (statement by President Clinton that the attack on the UN compound at Qana was due to a "tragic misfiring");

- U.S. Dep't of State Daily Press Briefing (Apr. 19, 1996), Memo. at 23-24 n.27 (endorsing Israel's view that the attack was a mistake).

However, it is a stretch to consider these "official positions" or "policy pronouncements" for purposes of determining whether they give rise to a political question. They are conclusory characterizations of a factual situation bereft of supporting evidence. They also ambiguous[2] and contradicted by other subsequent statements, such as the United Nations investigation, which refuted the claim that the attack was an accident.

Defendant cites other sources which bear no relation to the events at Qana:

---

Israeli casualties), 9 (State Department human rights report discussing Hezbollah's violence against Israelis), 10 (State Department briefing stating that Hezbollah fired in proximity to the UN compound at Qana).

[2] President Clinton's statement is internally inconsistent: he blames Hezbollah for "us[ing] those civilians as cover" (Memo. at 2 n.5) and at the same time concludes that the shelling was some sort of error. He does not explain why, even if Hezbollah were hypothetically inside the compound, that would have caused an Israeli "targeting error." If Hezbollah personnel were inside and if Israel's goal were to target them (itself a war crime), a "targeting error" would have resulted in Israel missing the compound. At the very least, Clinton's statement presumes that the IDF is entitled to be careless when attacking enemies who are in the vicinity of protected sites.

10

- UN Security Council Res. 1559 (2004) and U.S. Dep't of State Daily Press Briefing (June 7, 2005), Memo. at 23 n.24 (describing Hezbollah as a terrorist organization operating outside the rule of law);

- President George Bush & King Abdullah of Jordan, Press Conference (Mar. 15, 2005), Memo. at 23 n.25 (statement by President Bush about Hezbollah's potential disruption of Israeli-Palestinian negotiations);

- Center for Constitutional Rights website, Memo. at 25 n.28 (documenting unrelated litigation);

- A statement of Deputy State Department Spokesperson Philip T. Reeker, Memo. at 25, n.29 (deploring criminal charges in Belgium against U.S. officials);

- An interview with Secretary of State Colin Powell, id.; a statement of State Department Spokesperson Richard Boucher, id. (same);

- A statement of National Security Adviser Condoleeza Rice, Memo. at 26 n.30 (allies should not permit criminal charges against "freely and democratically elected leaders").

- *Airstrike by U.S. Draws Protests from Pakistanis*, N.Y. Times (Jan. 15, 2006) and White House Press Briefing (Jan. 4, 2006), Memo. at 26 n.31 (observing that U.S. military operations sometimes cause civilian deaths);

- *Annan 'increasingly concerned' by civilian casualties in Iraq*, UN News Centre (Mar. 26, 2003), Memo. at 26 n.32 (same);

- Remarks of Marc Grossman, Under-Secretary of State for Political Affairs (May 6, 2002), Memo. at 26 n.33 (opining that the International Criminal Court should not have jurisdiction over U.S. soldiers and officials).

11

Defendant also cites the Motion to Dismiss in *Doe v. Israel* in support of his political question argument. Memo. at 18-19. To the extent that this document is cited to establish the official position of the United States government on anything other than the application of the law to the specific facts of the *Israel* case, it is used to establish irrelevant facts and should be stricken from the record.

All of this proffered evidence is irrelevant to the political question doctrine, which is concerned with avoiding inconsistent judicial determinations of matters addressed by other branches of government. None of these items reflect positions of the administration concerning the events which are the subject of this suit. They refer to other matters wholly unrelated to the issues raised and do not address any of the factors set forth in *Baker v. Carr*, 369 U.S. 186, 211 (1962) ("[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance."). Due to their irrelevance and likeliness of obscuring the issues, they should be stricken.

### III.  CONCLUSION AND RELIEF SOUGHT

Plaintiffs object to the aforementioned evidence and ask that the Court strike it from the record. At a minimum, the Court should disregard evidence submitted by Defendant in support of his act of state argument under Rule 12(b)(6).

Dated: May 15, 2006                                          Respectfully submitted,

                                                             /s/
                                                             _____
                                                             Jim Klimaski
                                                             Attorney for All Plaintiffs