UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ALI SAADALLAH BELHAS, *et al.*,     )
                                    )
       Plaintiffs,                  )
                                    )
       v.                           )    Civil Action No. 05-2167 (PLF)
                                    )
MOSHE YA'ALON,                      )
                                    )
       Defendant.                   )
_____ )


OPINION

       This matter is before the Court on defendant's motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] Plaintiffs, citizens of Lebanon, have brought suit against Israeli General Moshe Ya'alon under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"), and the Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 (note) ("TVPA"). Plaintiffs allege that defendant's actions constitute war crimes, see Complaint (Compl.") ¶¶ 92-96, extrajudicial killing, see id. ¶¶ 97-101, crimes against humanity, see id. ¶¶ 102-106, and cruel, inhuman or degrading treatment or punishment, see id. ¶¶ 107-111. Defendant argues that this suit: is barred by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*; presents nonjusticiable political questions; and is barred by the act of state doctrine. For the following reasons, the Court grants the

---

[1] The papers that have been submitted in connection with this motion include: a Memorandum of Points and Authorities in Support of Moshe Ya'alon's Motion to Dismiss the Complaint ("Mem."); a Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint ("Opp."); and a Reply Memorandum of Points and Authorities in Further Support of Moshe Ya'alon's Motion to Dismiss the Complaint ("Reply").

defendant's motion to dismiss.

## I. MOTION TO DISMISS STANDARD

Federal courts are courts of limited jurisdiction, with the ability only to hear cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. See, e.g., Hunter v. District of Columbia, 384 F. Supp. 2d 257, 259 (D.D.C. 2005); Srour v. Barnes, 670 F. Supp. 18, 20 (D.D.C. 1987) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511 (1973)). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that the court has jurisdiction. See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004).

While generally a court must accept the allegation in a complaint as true and construe, all inferences in plaintiffs' favor on a motion to dismiss, where the motion is based "on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense to liability . . . the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case." Jungquist v. Al Nahyan, 115 F.3d 1020, 1027-28 (D.C. Cir. 1997) (internal quotations and citations omitted); see also Kilburn v. Socialist People's Libyan Arab Republic, 376 F.3d 1123, 1131 (D.C. Cir. 2004) ("Kilburn v. Libya"). More specifically, "when a foreign state defendant raises a dispute over the factual basis of the court's subject matter jurisdiction under the FSIA, the trial court is required to go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling on the motion to dismiss." Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d

82, 87 (D.C. Cir. 2002) ("Price v. Libya"); see also Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 38 (D.C. Cir. 2000).

II. BACKGROUND

This lawsuit arises from the bombing of Qana, within southern Lebanon, by the Israeli military on April 18, 1996. See Compl. ¶ 1. The bombing was the result of the conflict between Israel and Hezbollah. See id. ¶¶ 25, 30.[2] Civilians and United Nations ("UN") soldiers at a UN compound were killed in the Qana bombing. See id. ¶ 1. Plaintiffs are Lebanese citizens who were injured and/or killed in the Qana bombing, and their families. See id. ¶¶ 7-13. Defendant Moshe Ya'alon is a retired Israeli general who was the head of Israeli Army Intelligence at the time of the Qana bombing. See id. ¶¶ 2, 14, 20.

Defendant has submitted a letter regarding this lawsuit from the Ambassador of the State of Israel to the United States Department of State Under-Secretary for Political Affairs. See Exhibit A to Defendant's Motion to Dismiss, February 6, 2006 Letter from Daniel Ayalon to Nicholas Burns ("Ambassador's Letter"). The letter states that this lawsuit "challenge[s] sovereign actions of the State of Israel, approved by the government of Israel in defense of its citizens against terrorist attacks[,]" and opines that "[t]o allow a suit against these former officials is to allow a suit against Israel itself." Id. at 2. Plaintiffs allege that "[a]t all times relevant hereto, Defendant was acting under color of Israeli law." Compl. ¶ 26. It therefore is undisputed that General Ya'alon was acting in his official capacity with respect to the events underlying this lawsuit.

---

[2] Hezbollah has been designated by the United States government as a terrorist organization. See Mem. at 1.

III. DISCUSSION

*A. Foreign Sovereign Immunities Act*

Federal district courts have exclusive jurisdiction over civil actions against a foreign state, regardless of the amount in controversy, provided that the foreign state is not entitled to immunity under the Foreign Sovereign Immunities Act. See 28 U.S.C. §§ 1330, 1604; Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434-35 (1989). The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. at 434. Under the FSIA, a foreign state is presumed to be immune from suit and is in fact immune unless one or more of the exceptions to immunity specifically enumerated within the FSIA apply. See 28 U.S.C. §§ 1604-1607; Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); see also Price v. Libya, 294 F.3d at 87 (The FSIA "confers immunity on foreign states in all cases that do not fall into one of its specifically enumerated exceptions."). "[I]f none of the exceptions to sovereign immunity applies, district courts lack the jurisdiction in suits against a foreign state, or an agency or instrumentality thereof, regardless of the nature of the substantive claim." Foremost-McKesson, Inc. v. Iran, 905 F.2d 438, 442 (D.C. Cir. 1990). Defendant "bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d at 40. If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, as in this case, the Court "should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." Id.; see Kilburn v. Libya, 376 F.3d at 1127.

The FSIA defines "foreign state" to include a state's political subdivisions, agencies, and instrumentalities. See 28 U.S.C. § 1603(a); Republic of Austria v. Altmann, 541 U.S. 677, 691 (2004).[3] "Because Section 1603(a) defines 'foreign state' as including 'agencies and instrumentalities,' the distinction between the two is only relevant in the FSIA where explicitly drawn." Jacobsen v. Oliver, 451 F. Supp. 2d 181, 195 (D.D.C. 2006). Furthermore, the "armed forces are as a rule so closely bound up with the structure of the state that they must *in all cases* be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of a state." Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 153 (D.C. Cir. 1994) (emphasis added). "Individuals acting in their official capacities are considered 'agenc[ies] or instrumentalit[ies] of a foreign state;' these same individuals, however, are not entitled to immunity under the FSIA for acts that are not committed in an official capacity."

---

[3] 28 U.S.C. § 1603 provides, in relevant part:

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity--

    (1) which is a separate legal person, corporate or otherwise, and

    (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

    (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

5

Jungquist v. Al Nahyan, 115 F.3d at 1027 (internal citations omitted); see also El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996).

If General Ya'alon's actions were taken in an official capacity, he therefore was acting as an agency or instrumentality of the foreign state, and is immune from suit under the FSIA. See Jungquist v. Al Nahyan, 115 F.3d at 1027; El-Fadl v. Central Bank of Jordan, 75 F.3d at 671; see also Doe v. Israel, 400 F. Supp. 2d 86, 104 (D.D.C. 2005) ("A suit against an individual officer of a nation who has acted on behalf of that nation is the functional equivalent of a suit against the state itself."). It is clear from the complaint (including the case caption) that defendant is a retired Israeli military official who is being sued solely for actions taken in his official capacity. See Compl. ¶¶ 2, 20, 26. For example, plaintiffs allege that General Ya'alon "had command responsibility for the attack[,]" Compl. ¶ 2, and "participated in the decision to shell the UN compound at Qana." Id. There is no allegation that defendant's activities were "personal or private" in nature. On the contrary, plaintiffs themselves allege that defendant "was acting under color of Israeli law." Compl. ¶ 26. Defendant therefore is entitled to the FSIA presumption of immunity. See Jungquist v. Al Nahyan, 115 F.3d at 1027 ("Individuals acting in their official capacities are considered 'agencies or instrumentalities' of a foreign state[.]").

Plaintiffs argue that the Torture Victim Protection Act "provides liability for extrajudicial killing even if Defendant's conduct was authorized." Opp. at 2-3. Plaintiffs also argue that the FSIA "does not apply to those acting outside the scope of their authority under the applicable domestic or international law, and does not preclude claims against officials for war crimes, crimes against humanity, extrajudicial killing, and cruel, inhuman, or degrading treatment or punishment." Id. The Court will address each of these arguments in turn.

*B. Plaintiffs' Substantive Arguments*

1. Torture Victim Protection Act of 1991

Section 2(a) of the Torture Victim Protection Act of 1991 provides:

> An individual who, under actual or apparent authority, or color of law, of any foreign nation--
>
> (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
>
> (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

28 U.S.C. § 1350 (note). Plaintiffs argue that under the TVPA, individual officials of a foreign state should be treated differently from the state itself for purposes of FSIA immunity. See Opp. at 8-9. They maintain that the TVPA abrogates the FSIA as to individuals, since it provides for liability of individuals acting under actual or apparent authority or color of law. See id. at 6-9. They do not cite a single case, however, that holds that the TVPA abrogates the FSIA.

The Court disagrees with plaintiffs. Because a foreign official is an "agency or instrumentality" of the foreign state, see El-Fadl v. Central Bank of Jordan, 75 F.3d at 671 and Jungquist v. Al Nahyan, 115 F.3d at 1027, and agencies and instrumentalities of foreign states are included within the definition of "foreign state" in the FSIA, see 28 U.S.C. § 1603(a), the Court concludes that there is no basis in this case to treat individual officials differently from foreign states themselves under the FSIA. See Jacobsen v. Oliver, 451 F. Supp. 2d at 195 ("Because Section 1603(a) defines 'foreign state' as including 'agencies and instrumentalities,'

the distinction between the two is *only relevant in the FSIA where explicitly drawn*[,]" such as in Section 1606 and in Section 1608.) (emphasis added).

This conclusion does not lead to the result that no official acting on behalf of a foreign state can ever be sued under the TVPA. There are several statutory exceptions to the FSIA, including, among others, waiver, 28 U.S.C. § 1605(a)(1), certain actions by state sponsors of terrorism, 28 U.S.C. § 1605(a)(7), disputes arising from commercial activities of a foreign state, 28 U.S.C. § 1605(a)(2), and disputes arising from certain tortious acts committed within the United States, 28 U.S.C. § 1605(a)(5). In a case where an FSIA exception applies, a foreign state official acting in his official capacity could be sued under the TVPA. See Price v. Libya, 294 F.3d at 92 (analyzing TVPA claims against Libya under the state sponsored terrorism exception to the FSIA); Doe v. Israel, 400 F. Supp. 2d at 104-05 (analyzing ATCA and TVPA claims against individuals acting in an official capacity under specific statutory exceptions to the FSIA). Conversely, where no such exception applies, the courts of the United States lack jurisdiction to consider TVPA claims. See Austria v. Altmann, 541 U.S. at 691; Doe v. Israel, 400 F. Supp. 2d at 104-05.

2. Actions Outside the Scope of Lawful Authority

Plaintiffs also argue that sovereign immunity cannot bar this suit against defendant because the FSIA "may immunize officials only when they act within the scope of their lawful authority." Opp. at 10. They rely on Jungquist v. Al Nayhan for this proposition. See Opp. at 10-11. Jungquist makes very clear, however, that the reason a particular individual defendant in that case was not immune under the FSIA was not because his actions exceeded the

8

scope of his lawful authority, but rather because "Sheihk Sultan's promise to the Jungquists was . . . not in furtherance of the interests of the sovereign but [was] a personal and private action[,]" and therefore that one defendant was not entitled to FSIA immunity. Jungquist v. Al Nayhan, 115 F.3d at 1028. The defendant's actions in this case, by contrast, were in no way "personal or private" actions; the defendant therefore is entitled to FSIA immunity for the actions taken "in furtherance of the interests of the sovereign" and in his official capacity. As noted above, there is no question here that the defendant was acting solely in his official capacity. Not only does the complaint allege that he was acting under color of law, see Compl. ¶ 26, but defendant has produced evidence stating that the Israeli government views the actions described in the complaint as "sovereign actions" and "official state acts." Ambassador's Letter at 2.

    Plaintiffs also argue that defendant's actions on behalf of Israel cannot be within the scope of his authority because, they allege, the actions violated norms of international law and were war crimes, crimes against humanity and constituted prohibited extrajudicial killing. See Opp. at 15-21. They further maintain that defendant acted outside the scope of his authority under Israeli law. See id. at 21. Plaintiffs do not, however, try to fit their arguments within the framework of the statutory exceptions to immunity under the FSIA. See 28 U.S.C. § 1605(a).[4] As noted above, the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. at 434. There is no

---

[4] The plaintiffs do not argue, for example, that violations of the norms of international law constitute an implicit waiver of immunity under 28 U.S.C. § 1605(a)(1). Nor would such an argument be persuasive. See Princz v. Federal Republic of Germany, 26 F.3d 1166, 1174 (D.C. Cir. 1994) ("We have no warrant, therefore, for holding that the violation of *jus cogens* norms by the Third Reich constitutes an implied waiver of sovereign immunity under the FSIA."); see also Doe v. Israel, 400 F. Supp. 2d at 105 ("*Jus cogens* violations, without more, do not constitute an implied waiver of FSIA immunity.").

authority for the proposition that the TVPA, the ACTA or any other statute trumps or preempts the FSIA. Simply put, the FSIA "confers immunity on foreign states *in all cases* that do not fall into one of its specifically enumerated exceptions." Price v. Libya, 294 F.3d at 87 (emphasis added); see also In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005); Burnett v. Al Baraka Investment and Devel. Corp., 292 F. Supp. 2d 9, 14 (D.D.C. 2003).

Plaintiffs again invite the Court to distinguish between individual defendants and foreign states. See Opp. at 25. As the Court explained above, however, the D.C. Circuit has squarely held that foreign officials acting in their official capacities on behalf of foreign states are agencies and instrumentalities of foreign states, and thus are within the definition of a foreign state under the FSIA. See Jungquist v. Al Nahyan, 115 F.3d at 1027; El-Fadl v. Central Bank of Jordan, 75 F.3d at 671. As to foreign states, the Supreme Court explained that "Congress had violations of international law by foreign states in mind when it enacted the FSIA." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. at 435. "From Congress' decision to deny immunity to foreign states in the classes of cases just mentioned, we draw the plain implication that immunity is granted in those cases involving alleged violations of international law that do not come within one of the FSIA's exceptions." Id. at 436. The Court declines to craft an exception to the FSIA that is not found within the statute itself.

C. *Jurisdictional Discovery*

The scope of discovery "lies within the district court's discretion." Mwani v. Bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005). Plaintiffs assert that jurisdictional discovery is required in this case to permit resolution of factual disputes relating to jurisdiction. See Opp. at 26. They

10

argue that defendant's "entire defense of sovereign immunity lies in his claim that the shelling was accidental," a "question of fact [that] must be subject to discovery." Id. at 27. As explained above, however, a finding of sovereign immunity here does not rest upon factual findings such as the accidental nature of the shelling, but rather on the lack of a statutory exception in the Foreign Sovereign Immunities Act that grants the Court subject matter jurisdiction over this lawsuit. That is a legal conclusion rather than a factual finding; for that reason alone, it is apparent that no jurisdictional discovery is required. See In re Papandreou, 139 F.3d 247, 253-54 (D.C. Cir. 1998); Mwani v. Bin Laden, 417 F.3d at 17; Burnett v. Al Baraka Investment and Devel. Corp., 292 F. Supp. 2d at 15-16.

As the D.C. Circuit has explained, "[i]n light of the evidence that [defendant] proffered to the district court and the absence of any showing by [plaintiff] that [defendant] was not acting in his official capacity, discovery 'would frustrate the significance and benefit of the entitlement to immunity from suit.'" El-Fadl v. Central Bank of Jordan, 75 F.3d at 671 (citing Foremost-McKesson v. Islamic Republic of Iran, 905 F.2d at 449 (further internal quotations and citations omitted)). That statement applies equally well to this case. The Court therefore declines to allow jurisdictional discovery.

### III. CONCLUSION

Having concluded that the Court lacks subject matter jurisdiction over this action pursuant to the Foreign Sovereign Immunities Act, the Court need not decide whether this case involves non-justiciable political questions. See Center for Law and Education v. Dept. of Education, 396 F.3d 1152, 1156 (D.C. Cir. 2005) (The Court has "no trouble dismissing a claim

11

based on one jurisdictional bar rather than another.") (internal quotations and citations omitted). The Court also need not reach the question of whether adjudication of the conduct at issue would violate the act of state doctrine. For the foregoing reasons, defendant's motion to dismiss is granted. An Order consistent with this Opinion will issue this same day.

                                                                                          __/s/_____
                                                                                          PAUL L. FRIEDMAN
                                                                                          United States District Judge

DATE: December 14, 2006